908 P.2d 764

**Marcello ROMERO, Plaintiff–Appellant,**

v.

**TRUCHAS MUTUAL DOMESTIC WATER CONSUMER AND MUTUAL SEWAGE WORKS ASSOCIATION, Defendant–Appellee.**

**No. 15970.**

Court of Appeals of New Mexico.

Sept. 28, 1995.

Mark L. Ish, Carol J. Ritchie, Felker, Ish, Hatcher, Ritchie, Sullivan & Geer, P.A., Santa Fe, for Defendant–Appellee.

## OPINION

PICKARD, Judge.

1. Two issues are presented for our review in this negligence action: (1) whether Plaintiff adduced sufficient evidence to merit a jury trial and instruction on the doctrine of res ipsa loquitur; and (2) whether Plaintiff properly preserved the issue of res ipsa loquitur for appellate review when the trial court entered summary judgment for Defendant. We reverse the trial court's grant of summary judgment, and we remand for a new trial allowing the jury to consider evidence relating to negligence according to the doctrine of res ipsa loquitur. It is unnecessary to address Plaintiff's discovery issues.

## FACTS

2. Defendant is a non-profit corporation doing business in the unincorporated village of Truchas, New Mexico. Defendant operates a water and sanitary sewer system in Truchas, where Plaintiff resides. Plaintiff is a member of Defendant's water association. On November 14, 1992, Plaintiff found ten inches of water in his home. He notified Defendant's employees. Defendant excavated near Plaintiff's house and discovered a fracture in a weld in the yard line across from Plaintiff's home. The break was repaired and the water in Plaintiff's house subsided. Plaintiff's adobe home sustained structural damage due to inundation, and it may have to be razed and rebuilt.

3. Plaintiff alleged that the flooding of his house was caused by the break in the weld in a pipe operated and maintained by Defendant. The cause of the break was undeterminable. Plaintiff further alleged that Defendant had notice of prior breaks in the vicinity of Plaintiff's house and alleged that Defendant was negligent in failing to use due care in inspecting, replacing, or repairing the lines.

4. Defendant countered that there was insufficient evidence as a matter of law that Defendant was negligent. Defendant therefore filed a motion for summary judgment

John F. Quinn, Santa Fe, for Plaintiff–Appellant.

pursuant to SCRA 1986, 1–056 (Repl.1992). Based on Plaintiff's answers to interrogatories and deposition testimony, Defendant argued that Plaintiff was unable to provide evidence of prior notice to Defendant of breaks in the vicinity that were Defendant's fault. According to Defendant, because Plaintiff did not show any breach by Defendant of Defendant's duty to Plaintiff, Plaintiff failed to make out his prima facie case of negligence, entitling Defendant to summary judgment.

5. In response to the motion for summary judgment, Plaintiff argued that since the break occurred in a pipe controlled by Defendant, and since such a break would not occur in the absence of negligence, Plaintiff was entitled to present his case to a jury on the theory of res ipsa loquitur. Affidavits submitted to the trial court established that the leak was caused by a crack in the weld between the main line and the service line, and not by any corrosion, defect, or deterioration of the lines themselves. One affidavit said that the failure of the weld may have been caused by "stress as a result of the lever arm [e]ffect of the connecting horizontal run of the service line." Another said that it could not be determined "if the crack occurred as a result of stresses, settling, deterioration, or a defect in the weld."

6. The trial court agreed with Defendant and granted summary judgment in its favor. Plaintiff appeals.

## STANDARD OF REVIEW

■ 7. Whether res ipsa loquitur is proper in an "escape of water" case is an issue of first impression in New Mexico. In determining whether summary judgment was appropriately granted, we examine the whole record. *Pharmaseal Labs., Inc. v. Goffe,* 90 N.M. 753, 758, 568 P.2d 589, 594 (1977). In reviewing a grant of summary judgment, we do not, as Defendant suggests, review the record in the light most favorable to the prevailing party. Rather, we examine the record in the light most favorable to providing an opportunity of a trial on the merits. *North v. Public Serv. Co.,* 97 N.M. 406, 408, 640 P.2d 512, 514 (Ct.App.1982). We conclude that the record contains sufficient evidence to allow Plaintiff to go forward on a theory of res ipsa loquitur.

## RES IPSA LOQUITUR

■ 8. The doctrine of res ipsa loquitur applies only when, in the ordinary course of events, an injury would not occur except through negligence of the person in exclusive control and management of the injuring instrumentality. *Trujeque v. Service Merchandise Co.,* 117 N.M. 388, 391, 872 P.2d 361, 364 (1994). The ordinary course of events may be established by expert testimony, lay evidence, or common knowledge. *See Mireles v. Broderick,* 117 N.M. 445, 448, 872 P.2d 863, 866 (1994); *Harless v. Ewing,* 81 N.M. 541, 545, 469 P.2d 520, 524 (Ct.App. 1970); Janet Fairchild, Annotation, *Res Ipsa Loquitur as Applicable in Actions for Damage to Property By the Overflow or Escape of Water,* 91 A.L.R.3d 186, 204–05 (1979). Res ipsa loquitur does not demand proof of precise causes. *Strong v. Shaw,* 96 N.M. 281, 286, 629 P.2d 784, 789 (Ct.App.1980), *cert. quashed,* 96 N.M. 543, 632 P.2d 1181 (1981). Res ipsa loquitur searches primarily for facts which lead to a logical inference that a defendant was negligent. *Id.* The doctrine describes a set of conditions to be met before an inference of negligence may be drawn. *Mireles,* 117 N.M. at 448, 872 P.2d at 866. Application of the doctrine permits the jury to infer negligence on the part of a defendant, where the ability to prove or disprove negligence lies with the defendant. *Id.* The doctrine "relieves a plaintiff from the burden of producing direct evidence of negligence, it does not relieve [the plaintiff] from the burden of proof that the defendant was at fault...." Fairchild, *supra,* at 234 (discussing *George Foltis, Inc. v. City of New York,* 287 N.Y. 108, 38 N.E.2d 455 (1941)).

### A. Preservation of Issue

9. Defendant contends that Plaintiff's arguments for an application of the doctrine of res ipsa loquitur in this case were not timely raised. Plaintiff did not plead res ipsa loquitur in his complaint or raise it in the pre-trial order. Defendant submits that Plaintiff's raising the issue of res ipsa loquitur for the first time in his response to the summary

judgment motion is untimely. We are not persuaded.

10. Plaintiff's complaint sets forth the theory of liability on the basis of negligence. The doctrine of res ipsa loquitur, as discussed above, provides for an inference of culpability under certain circumstances, makes out the plaintiff's prima facie case with regard to evidence of specific acts of negligence, and presents a question of fact for the defendant to meet with an explanation. *Mireles*, 117 N.M. at 448, 872 P.2d at 866. Where the evidence shows that only the defendant had access to something which causes an injury, and where an injury occurs which would not ordinarily occur unless the defendant was negligent, it may be inferred that the defendant failed to exercise due care. *Hepp v. Quickel Auto & Supply Co.*, 37 N.M. 525, 529, 25 P.2d 197, 200 (1933).

11. Once the party moving for summary judgment has made out a prima facie case supporting its motion, the burden shifts to the opposing party to come forward with evidence to show at least a reasonable doubt as to whether a genuine issue of fact exists to merit a trial. *Requarth v. Brophy*, 111 N.M. 51, 55, 801 P.2d 121, 125 (Ct.App. 1990). Because res ipsa loquitur, if applicable, shifts the burden to the defendant to adduce facts sufficient to negate an inference of negligence, summary judgment is inappropriate where the failure to provide evidence of an issue of fact is the basis for the motion. Applicability of res ipsa loquitur defeats the defendant's attempt to prove the absence of disputed material facts, a necessary element for summary judgment.

12. Defendant did not object to the introduction of the res ipsa loquitur theory during the trial court proceedings on summary judgment. Under the circumstances, we do not agree that Plaintiff's bringing the issue of res ipsa loquitur before the trial court at the summary judgment hearing was unfair or prejudicial to Defendant. Moreover, inasmuch as theories supported by the facts of record may be raised for the first time on appeal for the purpose of defeating summary judgment, *see Pharmaseal Labs., Inc.*, 90 N.M. at 758, 568 P.2d at 594;

*Houghland v. Grant*, 119 N.M. 422, 426, 891 P.2d 563, 567 (Ct.App.1995), we see no reason why they may not be first raised at the summary judgment hearing.

### B. "Notice" For Purposes of Inferring Negligence

13. Defendant argues that it is liable only if it had actual or constructive notice of the defect which caused the damage, or if Plaintiff proves that Defendant actually caused the defect. Defendant cites *Cardoza v. Town of Silver City*, 96 N.M. 130, 132, 628 P.2d 1126, 1128 (Ct.App.), *cert. denied*, 96 N.M. 116, 628 P.2d 686 (1981), to support its argument. *Cardoza* did not involve the theory of res ipsa loquitur and is therefore inapposite.

14. Defendant's alleged lack of notice of the possibility of water leaks in the vicinity of Plaintiff's house is not fatal to Plaintiff's theory of res ipsa loquitur. In *Anello v. Kansas City*, 286 S.W.2d 49 (Mo.Ct. App.1955), the sidewalk in front of plaintiff's store caved in due to the erosive action of a sewer which was maintained by the City. *Id.* at 51. The City claimed that there was no evidence that it had notice of the possibility for collapse. *Id.* at 53. The Missouri Court summarily dismissed this defense, stating "[t]his being a res ipsa loquitur case no notice was required." *Id.* We hold that lack of notice to a defendant is not sufficient to defeat a claim under res ipsa loquitur.

### C. Occurrence in the Absence of Negligence.

15. The main issue in this case is whether Plaintiff may rely on the doctrine of res ipsa loquitur to allow a jury to infer negligence on the part of Defendant where a weld in Defendant's pipes gave way, allowing a substantial amount of water to escape and cause damage to Plaintiff's house. In determining whether to allow a plaintiff to proceed on a theory of res ipsa loquitur, the court must ask whether there are sufficient facts to support an inference that the injury was caused by the failure of the party in control to exercise due care. *Mireles*, 117 N.M. at 448, 872 P.2d at 866. In this case, it is undisputed that Defendant had exclusive con-

trol of the water system. Thus, the question is whether the second element of res ipsa loquitur—that the event does not ordinarily occur in the absence of negligence—was sufficiently established to permit Plaintiff to go forward to trial.

16. We recognize that, of the many cases that have decided this issue in one direction or other, each case often "turns upon some fact (or lack of fact) situation not shown in the instant case." *See Adam Hat Stores, Inc. v. Kansas City,* 316 S.W.2d 594, 596 (Mo.1958) (en banc). In that res ipsa loquitur is a rule that concerns permissible inferences, *see Hepp,* 37 N.M. at 529, 25 P.2d at 200, we also recognize that "[s]light differences in the evidence might change the inferences which may fairly be drawn. . . ." *See George Foltis, Inc.,* 38 N.E.2d at 461. Nonetheless, we find persuasive those cases from other jurisdictions as cited in Fairchild, *supra,* at 230–37, Section 18[a], holding that the doctrine of res ipsa loquitur is applicable to certain cases involving broken water pipes.

17. We set forth the circumstances or holdings of a few of them. In *Esberg–Gunst Cigar Co. v. City of Portland,* 34 Or. 282, 55 P. 961, 967 (1899), there was evidence that a properly laid and maintained water main would not ordinarily burst. The type of accident and resultant damage in that case therefore raised an inference of negligence. In *Adam Hat Stores,* the court said that, when the water main broke after less than half of what the evidence showed was its useful service life, the jury could infer one or another of a list of causes, most due to the negligence of the defendant. 316 S.W.2d at 598. The court relied on the following quote from the trial judge's opinion in the *George Foltis* case that was reversed on other grounds: "[W]ater mains which are properly laid . . . ordinarily do not break, any more than ordinarily trains are derailed, missiles fly, or elevators or walls fall; and when such a main does break the inference of negligence follows in logical sequence. . . ." *Id.* (quoting *George Foltis, Inc. v. City of New York,* 174 Misc. 967, 21 N.Y.S.2d 800, 803 (N.Y.Sup.Ct.1940), *aff'd,* 261 A.D. 1059, 26 N.Y.S.2d 609, *rev'd,* 287 N.Y. 108, 38 N.E.2d 455 (1941).) *See also C.C. Anderson Stores*

*Co. v. Boise Water Corp.,* 84 Idaho 355, 372 P.2d 752, 754–56 (1962) (where water company could not explain cause of breakage, but was bound to take notice that its pipes would deteriorate from time and use, company was required to take steps to guard against breaks); *Silverberg v. City of New York,* 59 Misc. 492, 110 N.Y.S. 992, 993 (1908) (city's exclusive management and control of a leaking water main allowed an inference of negligence); *Kind v. City of Seattle,* 50 Wash.2d 485, 312 P.2d 811, 814 (1957) (en banc) (burden on city to explain water main break or show it was without fault).

18. We review the showing in this case as compared to the foregoing cases and hold that the showing made was sufficient to allow Plaintiff to proceed. In the instant case, an affidavit of a professional registered engineer indicated that a break of this kind may have been foreseeable. An affidavit submitted by the secretary/treasurer of Defendant's Board of Directors stated that he had viewed the pipe and "could not determine if the crack occurred as a result of stresses, settling, deterioration, or a defect in the weld."

19. This testimony supports Plaintiff's position that Defendant's negligence caused the leak in the following manner. If the cause of the break was "stress" or "settling," a jury could reasonably determine that Defendant was negligent in not taking these factors into account in selecting, installing, and maintaining the weld and pipe or in preparing the ground for the pipes and backfilling them once laid. If the cause was deterioration of the weld, the jury might reasonably conclude that Defendant should have known that such welds are prone to deterioration and either used different welding material or undertaken a timely program of inspection and repairs. If the weld was defective, then Defendant may be liable on the basis of that defect. Although we recognize that the affiants also opined that there was no negligence in this case and that welds sometimes give way, such testimony is not conclusive. *See Harless,* 81 N.M. at 545, 469 P.2d at 524.

20. Further, even if all of the potential causes for the break could be conclusively shown not to be due to Defendant's negli-

gence, the only party with the means of making that showing in this case is Defendant. In that respect, it is exactly this type of situation that the doctrine of res ipsa loquitur was designed to address. Defendant owns and operates the pipe. Defendant acknowledges that it "is under a duty to exercise reasonable care in its operation of the water system," citing *White v. City of Lovington,* 78 N.M. 628, 630, 435 P.2d 1010, 1012 (Ct.App.1967). It is not unfair to Defendant to allow Plaintiff to base his prima facie case on res ipsa loquitur. Defendant may come forward at trial with proof of adequate pipes and welds to withstand foreseeable stress, well-engineered groundwork to guard against foreseeable settling around the pipe, a program of inspection and replacement at reasonable intervals, and no defect in the weld.

21. Defendant's argument that until the crack developed there would have been no practical way to detect it is unpersuasive. Whether, under the circumstances, the foreseeability of such a break (and the resultant damage) which occurred should be balanced against the costs of periodic inspections is a question for the jury, thus precluding summary judgment. *See Skaggs Drug Ctrs., Inc. v. City of Idaho Falls,* 90 Idaho 1, 407 P.2d 695, 698 (1965). While we sympathize with the fiscal constraints of a small non-profit utility association, the inference of negligence in this case is adequate to support the case going before a jury to determine whether or not Defendant exercised due care under the circumstances. Defendant's argument, based on the affidavit of its engineering expert, that it "generally is not the practice of a small water utility ... to excavate and expose the pipe line for inspection" cannot support a motion for summary judgment, although it may well carry the day with the jury.

22. Defendant is correct to assert that the bare fact that the water line broke, causing water to flood Plaintiff's house does not by definition indicate negligence on its part. *See Harless,* 81 N.M. at 545, 469 P.2d at 524 (character, not fact, of accident determines whether res ipsa loquitur should apply). Nevertheless, our review of the record shows that, for purposes of summary judgment, Plaintiff raised a sufficient conflict in issues of material fact by presenting sufficient evidence of exclusive control by Defendant and sufficient evidence (or common knowledge in light of the evidence presented) of an occurrence which does not ordinarily happen in the absence of negligence to permit Plaintiff to go forward on a res ipsa loquitur theory.

*CONCLUSION*

23. We reverse the trial court's grant of summary judgment to Defendant, and we remand with instructions that Plaintiff be permitted to go forward based on a theory of res ipsa loquitur.

24. **IT IS SO ORDERED.**

FLORES and BUSTAMANTE, JJ., concur.